UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
PAUL MESEROLE, BRIAN MILLER,
LAWRENCE MONROE, RHONDA
PLOUBIS, ALAN STREHOLSKI,
JUANITA SEIDL and WILLIAM MEAD,
On behalf of themselves and all others
similarly situated,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED  05/19/09

                      Plaintiffs,

08 Cv. 8987 (RPP)

**OPINION AND ORDER**

        -against -

SONY CORPORATION OF AMERICA, INC.
SONG ELECTRONICS, INC., sand SONY
CORP.,

                      Defendants.
-----------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       In a class action complaint filed on October 20, 2008, and amended on December

5, 2008 (the "Complaint" or "Compl."), Plaintiffs Paul Meserole, Brian Miller, Lawrence

Monroe, Rhonda Ploubis, Alan Streholski, Juanita Seidl and William Mead (collectively

referred to as "Plaintiffs"), commenced this action against Defendants Sony Corporation

of America, Inc., Sony Electronics, Inc., and Sony Corporation (collectively referred to as

"Sony" or "Defendants"), alleging state and federal breach of warranty and consumer

protection law claims related to an inherent defect (the "Defect") in the "Optical Block"

present in Sony Grand WEGA SXRD Rear Projection HDTV Televisions (the

"Televisions").

1

On January 16, 2009, Defendants filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6),[1] and this Court heard oral argument on Defendants' motion on March 30, 2009.[2] For the reasons stated below, Defendants' motion is GRANTED in full, and the Complaint is dismissed.

## 1. The Complaint

The seven named Plaintiffs in this action reside in New York, Pennsylvania, Mississippi, Texas, New Mexico, Wisconsin, and Connecticut. (Compl. ¶¶ 5-11.) Each of the named Plaintiffs purchased a Sony Rear Projection Television, which included with it a written warranty entitling purchasers to replacement of the Optical Block for a period of two years from the date of purchase, and labor costs associated with such repairs for a period of one-year from the date of purchase. (Compl. ¶¶ 5-11; Declaration of Richard Werder, Jr. in Support of Defendant's Motion to Dismiss ("Werder Decl."), dated January 16, 2009, Ex. A [Limited Warranty].)[3] Defendant Sony Corporation of America is a New York corporation, Defendant Sony Electronics is a Delaware corporation with principal offices in San Diego, California, and Defendant Sony Corporation is a Japanese corporation. (Compl. ¶¶ 12-14, 40.)

---

[1] Defendants filed a memorandum of law in support of their motion to dismiss on January 16, 2009 ("Def. Br."), to which Plaintiffs responded on February 13, 2009 ("Pl. Br."). Defendants filed a reply brief on February 23, 2009. ("Def. Reply Br.").

[2] Subsequent to the filing of the Complaint in this action, four other complaints were filed with this Court asserting substantially identical claims and involved common questions of law and fact. (See Ouellette v. Sony, 09-CV-1939 (RPP);Webber v. Sony, 09-CV-2557 (RPP); Raymo v. Sony, 09-CV-2820 (RPP); Cruisinberry v. Sony, 09-CV-3461 (RPP)). On April 9, 2009, this Court stayed further action in the aforementioned cases pending this Court's decision here.

[3] Although Plaintiffs did not include a copy of the limited warranty at issue in their Complaint, because the warranty is explicitly relied upon by Plaintiffs in support of their Complaint, this Court may consider the warranty without converting the motion to dismiss into one for summary judgment. See, e.g., Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565-66 (2d Cir. 2006) (holding that even if a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it relies and which is integral to the complaint, the court may nonetheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (same).

The Complaint alleges that the Defect with the optical block, which was present upon delivery of the televisions and which manifests itself over time, causes yellow stains, green haze, and other color anomalies to be displayed across the screens of the Televisions, severely interfered with the program display, and rendered the Televisions unsuitable for their intended viewing purposes. (Compl. ¶¶ 3, 19.) Each of the named Plaintiffs' Televisions suffered from the aforementioned anomalies, and after the anomalies appeared, each of the named Plaintiffs demanded a "warranty repair from Sony." (Compl. ¶¶ 5-11.) Sony refused to repair the Defect, and Plaintiffs spent approximately $1,500 to repair and replace the Optical Block themselves. (Compl. ¶¶ 5-11, 19.)

The Complaint charges that Sony knew of this defect "since no later than 2005," but took affirmative steps to keep it concealed from consumers, and as such, perpetuated a "massive consumer fraud upon hundreds of thousands of unsuspecting consumers within the United States who have purchased the Televisions, and spent as much as approximately $7,000" for the Televisions. (Compl. ¶¶ 3-4, 20.) The "aforementioned misrepresentations and omissions of fact and wrongful warranty practices were largely disseminated and directed from the principal offices on Sony Electronics, Inc. in San Diego, California." (Compl. ¶ 40.) Plaintiffs had no knowledge of the Defect when they purchased the Televisions. (Compl. ¶ 23.)

The Complaint alleges consumer protection claims under California law (Claims 1-3) and, in the alternative, under the laws of forty-eight other states (Claim 4). The Complaint also alleges that Sony breached the express and implied warranties provided with the Television. (Claims 5-8.)

3

## 2. Legal Standard

### A. Rule 12(b)(6)

In considering a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept all of the allegations set forth in the complaint as true, and must draw all reasonable inferences in favor of the plaintiffs. Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004); Halperin v. eBanker USA.Com, Inc., 295 F.3d 352, 356 (2d Cir. 2002); Garber v. Legg Mason, 537 F. Supp. 2d 597, 609-10 (S.D.N.Y. 2008).

The complaint must provide "plausible grounds" for the allegations with "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support them. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (Twombly "require[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.") A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

### B. Rule 9(b)

The Rules of pleading usually require only a "short and plain statement" of the plaintiff's claim for relief. Fed. R. Civ. P. 8. However, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff must: "(1) specify the statements that the plaintiff

4

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004); see also Lerner v. Fleet Bank, 459 F.3d 273, 290 (2d Cir. 2006); Eternity Global Master Fund v. Morgan Guart. Trust of New York, 375 F.3d 168, 187 (2d Cir. 2004).

To satisfy the particularity requirements of Rule 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA, 47 F.3d 47, 52 (2d Cir. 1995); see also Eternity Global Master Fund, 375 F.3d at 187. The requisite "strong inference may be drawn either (a) by alleging facts to show defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Acito, 47 F.3d at 52. Claims of fraud cannot be based on "speculation and conclusory allegations." Eternity Global Master Fund, 475 F.3d at 187 (quoting Acito, 47 F.3d at 187).

Rule 9(b) applies not only to formal averments of fraud, but also to allegations that sound in fraud, or where the "wording and imputations of the complaint are classically associated with fraud." Rombach, 355 F.3d at 171-72; see also In re Parmalat Sec. Litig., 479 F. Supp. 2d 332, 340 n.30 (S.D.N.Y. 2007) (even though fraud is not a necessary element of negligent misrepresentation claim, because the plaintiffs' claim alleges intentional fraudulent misrepresentation, it is subject to Rule 9(b)); Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996) ("It is the allegation of fraud, not the title of the claim that brings the policy concerns underlying Rule 9(b) to the forefront.")

5

Further, while traditionally associated with claims of securities fraud, Rule 9(b) has been applied to claims of consumer fraud as well as claims relating to consumer protection statutes. See, e.g., Thorogood v. Sears, Roebuck & Co., 2006 U.S. Dist. LEXIS 82975, *4 (N.D. Ill. 2006) (claims arising under Tennessee consumer protection act subject to Rule 9(b) standards); Archdiocese of San Salvador v. FM Int'l LLC, 2006 U.S. Dist. LEXIS 64156, *21 (D.N.H. 2006) (consumer protection claims which sound in fraud are subject to Rule 9(b) pleading standards); Meadowlands v. CIBC World Markets, 2005 U.S. Dist. LEXIS 21102 (S.D.N.Y. 2005) (Rule 9(b) applies to New Jersey Consumer Fraud Act claims); Nasik Breeding v. Merck, 165 F. Supp. 2d 514 (S.D.N.Y. 2001) (Rule 9(b) applies to claims of fraudulent inducement related to breeding of diseased chickens); Tuttle v. Lorillard, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (noting that Rule 9(b) applies to Minnesota's consumer protection statutes where "the gravamen of the complaint is fraud.")

**3. Plaintiffs Consumer Protection Claims.**

Plaintiffs put forth three consumer protection claims arising under California state law: "unlawful, unfair and fraudulent business acts and practices" in violation of Cal. Bus. & Prof. Code §17200 (Compl. ¶¶ 39-44); "untrue and misleading advertising" in violation of Cal. Bus & Prof. Code §17500 (Compl. ¶¶ 45-48), and; "unlawful practice in sale of consumer goods" in violation of the Consumer Legal Remedies Act (Cal. Civil Code §1750). (Compl. ¶¶ 49-57). In the event that California law does not apply, Plaintiffs also put forth consumer protection causes of action based on the laws of forty-eight other states, where the "class members reside." (Compl. ¶¶ 58-108).

6

Defendants argues that the aforementioned consumer protection claims should be dismissed because each of the claims sounds in fraud, and Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b). Defendants are correct that Rule 9(b) applies here because the Complaint is rife with allegations of fraudulent conduct attributed to Defendants. The crux of Plaintiffs' claim is that Sony was aware of the design defect inherent in the Optical Block but intentionally failed to disclose its existence to consumers. (Compl. ¶¶ 3, 5-11) (Televisions were "knowingly designed, manufactured, marketed, distributed and sold with the Defect by Defendants").

In omitting to disclose this inherent Defect, "as well as by its affirmative steps in attempting to keep [the Defect] concealed, Sony perpetuated a massive consumer fraud upon hundreds of thousands of unsuspecting consumers." (Compl. ¶ 4.) Indeed, the Complaint repeatedly stresses that Sony knew about this design defect as early as 2005, but concealed this material fact regarding the Defect from consumers. (Compl. ¶¶ 17-24, 42.) By concealing this Defect, the Complaint alleges, "Sony committed acts and omissions with actual malice and accompanied by a wanton and willful disregard of persons." (Compl. ¶ 30.) Each of the four consumer protection actions incorporates the aforementioned allegations. (Compl. ¶¶ 39, 45, 49, 58.)

Such allegations -- that Defendants knowingly concealed material defects in a product from purchasing consumers -- are grounded in fraud and are subject to the heightened pleading requirements of Rule 9(b). See, e.g., Meinhold v. Sprint Spectrum, 2007 U.S. Dist. LEXIS 35806, *16-18 (E.D. Cal. 2007) (California consumer protection claims that manufacturer knowingly made false statements concerning products were subject to Rule 9(b)); Brothers v. Hewlett-Packard, 2006 U.S. Dist. LEXIS 82027 (N.D.

Cal. 2006) (applying rule 9(b) where allegations that manufacturer was aware of defect and made misrepresentations about products).

With regard to the first cause of action here, that of "unlawful, unfair and fraudulent business acts," Plaintiffs assert that Sony violated this statute because it "knew that its Televisions contained a characteristic defect, and it determined to benefit economically by distributing these defective products to consumers."  (Compl. ¶42.) This claim is dismissed because, and as explained in more detail, infra, Plaintiffs have not put forth any particularized allegations evincing that Sony knew about the alleged defect prior to distributing the products to Plaintiffs.  Rather, the Complaint's allegations in this respect are conclusory and devoid of specific factual averments.  Hence, this claim is dismissed.

To plead their second cause of action -- untrue and misleading advertising – Plaintiffs allege that "Sony caused advertisements to be placed before the general public, but Sony's product did not conform to the advertisements," and that these advertisements "induce[d] the consuming public to purchase the Televisions."  (Compl. ¶47.)  In the Complaint, Plaintiffs point only to Sony's general marketing materials which state that the Televisions delivered "stunning detail and clarity" with "highly accurate natural colors" and able to correctly display 2 million detail points per panel. (Compl. ¶17.)  The Complaints fails to allege when and where these advertisements were shown or why the aforementioned advertisements were untrue or misleading.  Indeed, while the crux of Plaintiffs' claim is that the Optical Block gradually eroded over time to produce a yellow and green hue on the screen, this claim bears little connection to Sony's advertisement

claiming that the Televisions had "stunning detail and clarity" and "highly accurate natural colors." Accordingly, this claim is dismissed.

Next, Plaintiffs put forth a host of claims under the California Consumers Legal Remedies Act ("CLRA"), alleging that: Sony "misrepresented that the Televisions were free from defects, when in fact they contain[ed] a significant defect that result[ed] in the generation of yellow stains, green haze and other ... anomalies";[4] misrepresented that the Televisions were "capable of properly rendering a video program and able to do so with a high degree of precision"; misrepresented that the Televisions were capable of "properly rendering video without yellow stains, green haze and other ... anomalies"; misrepresented that the Televisions would "properly play HDTV and standard definition programming"; falsely advertised the Televisions as providing "high quality video playback," and; misrepresented that the Televisions were "capable of high-quality, color accurate, video display, when in fact they were not." (Compl. ¶ 51.)

However, Plaintiffs do not allege when or by whom those alleged misrepresentations were made, whether they were relied upon by Plaintiffs in determining whether to purchase the Televisions, or the basis for Plaintiffs' claim that Defendants knew that those statements were false and misleading. (Compl. ¶¶ 17-18.) Moreover, as noted, Plaintiffs have failed to explain how any of those statements were untrue or misleading given that the aforementioned allegedly untrue statements do not state anything about the wrong alleged by Plaintiffs, which is that the Optical Block wore

---

[4] Contrary to Plaintiffs' unsupported claim, Defendants did not guarantee that the Televisions were "free from defects." (Compl. ¶ 51.) Rather, Sony warranted only "against defects in material or workmanship for the time periods ... as set forth below," which was a period of one to two-years. (Werder Decl. Ex. A.) Indeed, far from guaranteeing that the Televisions were defect free, the warranty provided that the terms of the limited warranty were the purchasers' "exclusive remedies" in the "event of a defect." (Id.) Thus, the warranty explicitly acknowledged that the Televisions possibly contained defects that would be fixed by Sony for a period of one-year for most parts and two-years for the Optical Block.

out over time. Accordingly, as Plaintiffs have failed to plead fraud with particularity, their claims under the CLRA are dismissed.

Lastly, and in the alternative to the causes of action under California law, Plaintiffs allege unfair competition claims under the laws of forty-eight other states, where potential class members allegedly reside. (Compl. ¶¶ 61-108.) Specifically, Plaintiffs allege that Sony engaged in unfair methods of competition and unfair or deceptive trade practices by "selling the Televisions to consumers with the representation that they would accurately and properly render video programs, without revealing that the Televisions were defective when sold and that their screens would eventually be obscured, in whole or in part, by the Defect, and due to defendants' improper warranty practices and false and misleading statements to consumers about the existence of, and fix for, the Defect." (See, e.g., Compl. ¶61.) Once again, these causes of action fail to state with any particularity who, when or where made those representations, or why the statements were fraudulent when made. Accordingly, these claims too, stated in the alternative, are dismissed.[5]

In sum, Plaintiffs consumer protection claims (claims 1-4) are dismissed because they have not been pled with sufficient particularity.[6]

---

[5] Defendants separately argue that Plaintiffs' consumer protection claims under the laws of New York, Pennsylvania and Texas must be dismissed because Plaintiffs have not sufficiently pled that the purchasers relied on Defendants' allegedly misleading statements. (Def. Br. at 19-21). The applicable case law does not appear to support Defendants' argument. See Monsanto v. Altman, 153 S.W.3d 491, 495 (citing Weitzel v. Barnes, 691 S.W.2d 598, 600 (Tex. 1985) ("a consumer is not required to prove reliance as an element to recover under the DTPA (Deceptive Trade Practices Act)"); Pelman v. McDonald, 396 F.3d 508, 511 (2d Cir. 2005) (citing Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000) (private action brought under Section 349 does not require reliance); Alberton v. Commonwealth Land Title Insurance, 2008 U.S. Dist. LEXIS 6975, *28 (E.D. Pa. 2008) ("individualized proof of justifiable reliance is no longer required to succeed on a claim under the" Pennsylvania Unfair Trade Practices Act and Consumer Protection Law).

[6] In further support of their motion to dismiss, Defendants argue that all claims arising under California law must be dismissed because no California plaintiff has been included as part of the action. However, under New York's conflict-of-law analysis, which applies when jurisdiction is based on diversity grounds, courts

### 3. Plaintiffs' Breach of Warranty Claims

Plaintiffs assert four breach of warranty claims: 1) breach of express warranty; 2) breach of implied warranty; 3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (the "MMWA"); and 4) violation of the California Song Beverly Consumer Warranty Act, Cal. Civ. Code § 1792 (the "SBCWA").

### A. Breach of Express Warranty

The Limited Warranty provided by Sony states that Sony would replace or fix the Optical Block for two years from the original date of purchase of the Televisions. (Werder Decl., Ex. A.)  Plaintiffs do not allege in their Complaint that they presented their defective products for repair within the prescribed two-year period and that Sony refused to repair the products.  Rather, the crux of Plaintiffs' argument is that because the Optical Block was inherently defective, Sony breached its express warranty at the time the goods were delivered, even if the defect did not manifest itself until after the express warranty period was over.  (Compl. ¶ 124; Pl. Br. at 13-15.)

This claim by Plaintiffs -- that a defect discovered outside of the period provided on the applicable written warranty, but latent before that time, may be the basis of a valid

---

in contracts cases employ the "center of gravity" approach, which includes consideration of the place of the transaction, the location of the subject matter at issue, the place of the defendant's performance or failure to perform, and the domicile or place of business of the contracting parties. See Matter of Allstate Ins. v. Stolarz, 81 N.Y.2d 225, 227 (1993).  For tort cases, New York courts typically look at the policies underlying the competing laws in determining which states' laws are to be applied. Id.  Hence, while Defendants claim that the New York courts will apply the laws of the states in which the Plaintiffs live, and therefore, the California claims should be dismissed, under the New York conflict-of-law analysis, this is not always the case. See, e.g., Carlenstolpe v. Merck, 638 F. Supp. 901, 910 (S.D.N.Y. 1986) (ruling that laws of place of manufacture of product, and not location of injury, applied under New York conflict-of-laws analysis). Accordingly, at this early stage of the litigation, where Plaintiffs have adequately pled that sufficient business decisions relating to the Televisions were made at Defendant's headquarters in California (Compl. ¶ 40), a detailed choice of law analysis would be premature. See, e.g., In re Grand Theft Auto, 2006 U.S. Dist. LEXIS 78064, *11 n.3 (S.D.N.Y. 2006) (choice of law analysis premature at class certification stage; better conducted after factual issues more fully developed); see also Harper v. LG Electronics, 595 F.Supp.2d 486, 490-91 (D.N.J. 2009) (on the record before it, the court found that choice-of-law decision on motion to dismiss was premature).

express warranty claim if the warrantor knew of the defect at the time of sale -- was considered and rejected by the Second Circuit in <u>Abraham v. Volkswagen of America</u>, 795 F.2d 238, 250 (2d Cir. 1986), a putative class action wherein the plaintiffs asserted a breach of express warranty claim against an automotive manufacturer.  The Court of Appeals noted that the "general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed."  <u>Id.</u>  The Court further explained:

> Moreover, virtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty.  All parts will wear out sooner or later and thus have a limited effective life.  Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

<u>Id.</u>

Hence, <u>Abraham</u> stands for the broad proposition that a latent vehicle defect known to the manufacturer at the time of sale that does not manifest itself until after expiration of the express warranty does not give rise to a breach of express warranty.  The reasoning provided by the Second Circuit in <u>Abraham</u> has been followed by numerous courts nationwide.  See, e.g., <u>Clemens v. DaimlerChrysler</u>, 534 F.3d 1017 (9th Cir. 2008) (dismissing breach of express warranty claims where alleged "latent defect" revealed itself after the expiration of the warranty); <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 616 (3d Cir. 1995) (dismissing breach of written express warranty claim where plaintiffs alleged that the defect "did not appear until after the

expiration of the respective warranty period"); In re OnStar Contract Litigation, 2009 U.S. Dist. LEXIS 12583 (E.D. Mich. 2009) (rejecting breach of warranty claim based on latent defects in product which manifested after express warranty expired); Ne. Power Co. v. Balcke-Durr, Inc., 1999 U.S. Dist. LEXIS 13437, *14 (E.D. Pa. 1999) (explaining that "the case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects which are typically not discovered until after the expiration of the warranty period.); Daugherty v. American Honda Motor Company, 144 Cal. App.4th 824 (Cal. App. 2d Dist. 2006) (in dismissing breach of express warranty claim based on failure to disclose latent defect that did not become apparent until after warranty had expired, stated that a "failure of a product to last forever would become a 'defect,' a manufacturer would not longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself")   Accordingly, as Plaintiffs have not alleged that the Defect presented itself during the two-year period provided by the written warranty, Plaintiffs have not sufficiently pled that Defendants breached the express warranty provided with the Televisions.

Relying primarily on Carlson v. General Motors Corp., 883 F.2d 287, 296 (4th Cir. 1989), Plaintiffs asserts in the alternative that Defendant's knowledge of and failure to disclose major and inherent defects in the Optical Block makes the limitations clause contained in the Limited Warranty unenforceable as unconscionable.  (Compl. ¶ 126.) See Carlson, 883 F.2d at 296 (held that although the plaintiffs alleged latent defects that manifested after the expiration of express warrant, denied motion to dismiss because plaintiff sufficiently pled unconscionability to state a claim for breach of express warranty); Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 622 (M.D.N.C.

13

2005), adopted by, 2006 U.S. Dist. LEXIS 3634 (M.D.N.C. 2006) (same); Mazerolle v.

DaimlerChrysler Corp., 2002 Me. Super. LEXIS 169 (Me. Sup. Ct. 2002) (same). This

issue was not addressed by the Second Circuit in Abraham. See McCalley v. Samsung,

2008 U.S. Dist. LEXIS 28076, *19-20 fn. 4 (D. N.J. 2008) (recognizing that under

Abraham the general rule is that an express warranty does not cover repairs made after

applicable time limits have elapsed, but stating that some courts recognize an exception

for claims alleging that the express warranty is unconscionable).

   In Carlson, the plaintiffs sought recovery for inherently defective automobile

engines, some of which had failed beyond the warranty period, on the grounds that the

durational limits imposed in the limited warranty were unconscionable. The crux of the

plaintiffs' argument, which largely parallels that put forth by Plaintiffs here, was that

General Motors knew of this major defect in the automobiles' engines, but had failed to

disclose this defect to consumers. In reversing the District Court's decision on the

defendants' 12(b)(6) motion to dismiss, the Carlson court found that the plaintiffs had

sufficiently pled that the warranty limits were unconscionable where the plaintiffs had

pled that the defendant knew in advance of the defect and prevented the less-informed

consumers from learning of the defect. 883 F.2d at 296. The inequality of bargaining

power could have rendered the consumer's agreement to the limited period "neither

knowing nor voluntary." Id. ("proof that GM knew of and failed to disclose major,

inherent product defects would obviously suggest that its imposition of the challenged

"durational limitations" on implied warranties constituted "overreaching," and that the

disclaimers themselves were therefore "unconscionable." When a manufacturer is aware

that its product is inherently defective, but the buyer has "no notice of [or] ability to

14

detect" the problem, there is perforce a substantial disparity in the parties' relative bargaining power.")

In contrast to the plaintiffs in Carlson, Plaintiffs here have not sufficiently pled that the limited warranty period was unconscionable because, as noted earlier, Plaintiffs have not sufficiently pled that Defendants knew about the Defect prior to the sale of Televisions. See Duffy v. Samsung, 2007 U.S. Dist. LEXIS 14792, *14-15 (D.N.J. 2007) ("unconscionability is measured at the time the contract was formed"); U.C.C. § 2-302 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract") (emphasis added).

Specifically, the Complaint states that "Sony has known about the defect in the design of the Optical Block contained in the Televisions since no later than 2005, as earlier models of SXRD televisions including the KDS-RX0XBR1 models similarly experienced severe Optical Block problems." (Compl. ¶ 20.) However, no Plaintiffs allege that they purchased the Televisions in 2005 or later. (Compl. ¶¶ 5-12.) In fact, the Complaint is devoid of any dates indicating when the Televisions were actually bought by Plaintiffs. Simply put, beyond Plaintiffs' bare-boned allegation that Sony was aware of the Defect when the Televisions were sold, the Complaint puts forth no facts providing a plausible basis for inferring that Defendants knew of the Defect prior to the sale of the Televisions here. See Maniscalco v. Brother Int'l Corp., 2008 U.S. Dist. LEXIS 50122, *35 (D.N.J. 2008) (plaintiffs' conclusory allegation that defendant knew about the defect prior to purchase was insufficient to defeat motion to dismiss; "Court will not infer an essential element" of the action); cf. Payne v. FujiFilm, 2007 U.S. Dist. LEXIS 84765,

15

*12-13 (D.N.J. 2007) (unconscionability sufficiently pled where Plaintiff "specifically alleges" that Defendant knew about the defects but failed to disclose them to Plaintiff).

Accordingly, Plaintiff's claim that the durational limitation on the Limited Warranty is unconscionable fails as a matter of law, and Plaintiffs' breach of express warranty claim is dismissed.

ii. Breach of Implied Warranty.

Plaintiffs allege a claim for breach of implied warranty of merchantability, which under U.C.C. § 2-314 requires that the product be reasonably fit for the ordinary purpose for which it was intended. (Compl. ¶ 132.) Such a warranty provides for a "minimal level of quality." Ferracane v. United States, 2007 U.S. Dist. LEXIS 6569, *25-26 (E.D.N.Y. 2007). This implied warranty "arises automatically in every sale of goods by one who is a merchant in those goods." See Abraham, 795 F.2d at 249. According to Plaintiffs, the Televisions were "unfit for their intended and ordinary purpose" due to the Defect in the Optical Block. See Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005) (liability for "breach of warranty [of merchantability] depends on the 'expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.")

Plaintiffs also allege a claim for breach of the implied warranty of fitness for a particular purpose, which under U.C.C. § 2-315 requires sellers to provide goods fit for a particular purpose if the seller at the time of contracting has reason to know any particular purpose for which the goods are required and also knows that the buyer is relying on the seller's skill or judgment to seller or furnish suitable goods. (Compl. ¶133.) See Factory Assocs. & Exps. v. Lehigh Safety Shoe Co., 2007 U.S. Dist. LEXIS

16

46290, *29 (N.D.N.Y. 2007) (to establish claim for breach of an implied warranty of fitness for a particular purpose, "the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill.") In support of this claim, Plaintiffs allege that they "unknowingly purchased defective Televisions for personal use." (Id.)

U.C.C. § 2-316 permits manufacturers to limit the duration of implied warranties to the duration of their express warranties if such limitation is clear and conspicuous. Here, the Warranty stated, in bold face font that was separated from the other clauses contained in the Warranty, that "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ON THIS PRODUCT IS LIMITED IN DURATION TO THE DURATION OF THIS WARRANTY," which, as noted, was two years for the replacement of the Optical Block. (Werder Decl., Ex. A.) As Plaintiffs do not contest, this warning was clear and conspicuous and therefore, the implied warranties were limited to two-years. See Kolle v. Mainship Corp., 2006 U.S. Dist. LEXIS 28956, *3 (E.D.N.Y. 2006) ("common practice of setting forth such language of limitation in large, boldface, type, often in an eye-catching location apart from any boilerplate paragraphs of the agreement, meets [the clear and conspicuous] requirement and is enforceable"); cf. Factory Assocs. & Exps., 2007 U.S. Dist. LEXIS 46290, at *25-27 (duration limit on implied warranty not clear and conspicuous where the disclaimer was in smaller type than rest of the warranty, was not in capital letters, and was not bolded).

17

Accordingly, to state a claim for breach of the implied warranties, Plaintiffs must allege that the implied warranties were breached during the aforementioned two-year period. See, e.g., N.J. Transit Corp. v. Harsco, 497 F.3d 323, 330 (3d Cir. 2007) (holding that the petitioner could not "rely on the implied warranties of merchantability and fitness for a particular purpose to recover damages, where the contract's one-year express warranty had expired at the time of the loss."); McCalley v. Samsung, 2008 U.S. Dist. LEXIS 28076, *17-19 (D.N.J. 2008) (same). Put differently, the relevant question for the Court is whether, during the first two years following the sale of the Televisions, the Televisions were fit for the ordinary purposes for which Televisions are used and whether the Televisions were fit for a purpose agreed upon between the seller and purchaser.

The Complaint here does not set forth any claims that the Televisions did not fulfill their intended and ordinary use during the applicable two-year period. Rather, every claim of breach of warranty arises from events occurring subsequent to the expiration of the two-year period. Further, the Complaint not only fails to allege that the goods were unfit for an agreed upon particular purpose during the two-year period, but also fails to allege that there were any specific agreements between the buyer and seller at the time of sale.[7] See Abraham, 795 F.2d at 249 (to state a claim for breach of implied warranty of particular purpose, the plaintiffs must allege that the "seller kn[ew] or ha[d] reason to know the particular purpose" for which the Plaintiffs required the goods).

_____

[7] Additionally, Plaintiffs' claim that Sony breached the implied warranty of fitness for a particular purpose is dismissed because the Complaint has failed to allege privity between Plaintiffs and the sellers. See Abraham, 795 F.2d at 249 ("to have a cause of action for breach of an implied warranty of fitness ... privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller"). Whether privity is required under the implied warranty of merchantability is dependent on the applicable state law. Id.

Accordingly, Plaintiffs' claims for breach of implied warranty of merchantability and of fitness for a particular purpose are dismissed.[8]

### iii. Claims under the Magnuson-Moss Warranty Act.

"The MMWA makes a warrantor directly liable to a consumer for breach of a written warranty." Wilbur v. Toyota Motor Sales, 86 F.3d 23, 26 (2d Cir. 1996); 15 U.S.C. § 2310(d)(1). The MMWA does not, however, create additional bases for recovery under federal law, but rather allows a consumer to recover damage under existing state law. See Diaz v. Paragon Motors of Woodside, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986); see also Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) (claims under the MMWA rely on state law causes of action).

Similarly, under the MMWA, a consumer who "is damaged by a supplier's failure to comply with an implied warranty may file a claim in federal court." 15 U.S.C. § 2310(d). The MMWA defines "implied warranty" as "an implied warranty arising under state law in connection with the sale by a supplier of a consumer product." See 15 U.S.C. § 2301(7); Diaz, 424 F. Supp. 2d at 540. Accordingly, because Plaintiffs have not alleged a state law violation of either an express or implied warranty, their claim under the MMWA is dismissed.

### iv. Song Beverly Consumer Warranty Act

---

[8] In their Complaint, Plaintiffs do not allege that the limitation on the duration of the implied warranties was unconscionable. (Compl. ¶¶128-135.) However, in their brief in Opposition to Defendant's 12(b)(6) motion, Plaintiffs change course and assert that Sony's limitation of the implied warranties was unconscionable. (Pl. Br. at 15-17.) To the extent that Plaintiffs argue this claim, it is rejected for the reasons specified, supra.

19

Under the sections of the Song Beverly Consumer Warranty Act cited by Plaintiffs in their Complaint, manufacturers are required to "make available to authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period." Cal Civ. Code § 1793.2(a)(3). Further, the Act requires that the "goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days." Cal Civ. Code § 1793.2(b). Accordingly , a plaintiff pursuing an action under Section 1793.2 must allege that "1) the product had a defect covered by the express warranty; 2) the product was presented to an authorized representative of the manufacturer for repair; 3) the manufacturer or its representatives did not repair the defect or nonconformity after a reasonable number of repair attempts." Harlan v. Roadtrek Motorhomes, 2009 U.S. Dist. LEXIS 29169, *28 (S.D. Ca. 2009) (citing Robertson v. Fleetwood Travel Trailers of California, 144 Cal. App. 4th 785, 798-799 (Cal. Ct. App. 2006).

Here, because Plaintiffs have not alleged that the Televisions had a defect covered by the express warranty, Plaintiffs claims under the Song Beverly Consumer Warranty Act are dismissed.

**4. Conclusion**

Defendants' motion to dismiss is GRANTED, and the Amended Class Action Complaint is DISMISSED. Plaintiffs are granted thirty days leave to replead their claims. See Fed. R. Civ. P. 15(a) (requiring that courts "freely" grant leave to amend "when justice so requires"); see Adams v. Labaton, Sucharow, and Rudoff, 2009 U.S. Dist. LEXIS 35085 (S.D.N.Y. 2009) (citing Cohen v. Citibank, 1997 U.S. Dist. LEXIS 2112, at *2 (S.D.N.Y. 1997) ("[I]t is the usual practice upon granting a motion to dismiss

to allow leave to replead").

IT IS SO ORDERED.

Dated: New York, New York
     May *18*, 2009

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order faxed to:

Attorney for Plaintiff
Leigh Smith
Milberg LLP
One Pennsylvania Plaza, 50th Floor
New York, NY 10119
Fax: 212-868-1229

Attorneys for Defendant
Richard Werder, Jr.
Quinn Emanuel LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Fax: 212 849 7100